THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDWARD H. KELLY, Appellant.

Argued April 12, 1951; decided June 1, 1951.

*Whitman Knapp, Jack B. Weinstein* and *Guido J. Napoletano* for appellant. The trial court in its charge incorrectly set forth the rule of law as to the responsibility of defendant in the event that he did not know the nature and quality of the act or did not know that the act was wrong. (*People* v. *Becker,* 210 N. Y. 274; *People* v. *Fanning,* 131 N. Y. 659; *People* v. *Corey,* 157 N. Y. 332; *People* v. *Spitzer,* 294 N. Y. 5; *People* v. *Intersimone,* 266 App. Div. 280.)

*Louis G. Bruhn, District Attorney* (*Vincent G. Connelly* of counsel), for respondent. The charge was fair and proper. (*People* v. *Tobin,* 176 N. Y. 278.)

CONWAY, J. On Main Street in the center of the city of Kingston at nine o'clock of a bright, clear Monday morning, the defendant shot and killed one Elouise McHugh with a hunting rifle with which he then shot himself in the head. The acts were committed in the presence of a number of persons. The defendant, who testified in his own behalf, did not deny the killing. He testified that he had no recollection of what had happened from three o'clock Sunday afternoon until after he shot himself the following morning.

The sole defense was that defendant was insane at the time of the homicide and excused from criminal liability under section 1120 of the Penal Law. The defendant introduced opinion evidence, which we need not detail, since it was for the jury to assess and evaluate it, to the effect that his mental condition

was such that, at the time of the commission of the homicide, he did not know the nature and quality of his act and he did not know that the act was wrong. That opinion evidence, if believed by the jury, was sufficient to warrant a verdict of acquittal. No contrary opinion evidence was introduced by the People.

When the defense of insanity is raised under section 1120 of the Penal Law, the People must establish on the whole case beyond a reasonable doubt *both* that the defendant knew the nature and quality of his act *and* that he knew the act was wrong. To put it in another and converse manner, the defendant is entitled to acquittal if the jury find *either* that he did not know the nature and quality of his act *or* that the act was wrong. We are not satisfied that this rule of law was properly and clearly presented to the jury, despite the evident desire of the learned Trial Judge to do so.

The distinction embodied in the statute, between knowledge of the nature and quality of the act and knowledge that the act was wrong, is not artificial, as the records of this court attest. Very recently, in *People* v. *Samuels* (302 N. Y. 163) we had before us a defendant of such a mentality that the two psychiatrists designated by the director of division of psychiatry of Bellevue Hospital, department of hospitals of the city of New York, pursuant to an order of the Court of General Sessions of the County of New York and who testified on his behalf differed in their diagnoses. One was of the opinion that defendant " would know the nature and quality of his act, but would not know that it was wrong ", while the other was of the opinion that defendant would " know an act was wrong, without understanding the nature or quality of it." (*supra,* pp. 169, 170.)

In *People* v. *Sherwood* (271 N. Y. 427 [CROUCH, J.]), we noted that it was " of the utmost importance " that the law as respects criminal responsibility under section 1120 of the Penal Law be made clear to the jury, and we there reversed because " * * * it was not made clear that a defect of reason which inhibited a knowledge *either* of the nature and quality of the act *or* that the act was wrong, excused a person from criminal liability." (Emphasis in original; pp. 432–433.) We felt that the wording of the charge left doubt as to " whether the jury had a clear conception of when a person is or is not criminally liable

under section 1120.'' (P. 433.) We appreciated then, and do now, that it is not easy to make the distinction between the two subdivisions of section 1120 clear to a juror who is a layman and neither a judge nor a psychiatrist. There is danger that a layman, in the case of a killing under the circumstances here presented, may become impatient with the distinction, although, as noted, its reality has many times been determined. The impatience of the layman and the seeming ruthlessness of the killing here placed an added burden on the trial court to make the applicable rule of law clear to the jurors.

In the case at bar the Trial Judge did not make clear the meaning of section 1120, for after reading that section verbatim to the jury, he proceeded to construe it contrary to its plain meaning. Thus, he said: '' I charge you that, *if,* on this evidence and on all the facts and circumstances, included in it, both the evidence of the defendant and the evidence of the People, *you come to the conclusion* beyond a reasonable doubt that the defendant fired the shot that killed Elouise McHugh and *that he knew the nature and quality of the act* OR *that he knew that it was wrong, then he is responsible* in law for the act which he did and it is a jury's duty to so declare.'' (Emphasis supplied.)

It is apparent therefore that, contrary to the statute, the court incorrectly told the jury that defendant could be convicted upon a finding *either* that he knew the nature and quality of his act *or* that he knew it was wrong, whereas in truth the defendant, under the statute, was not criminally responsible for his act unless the jury found *both.*

Immediately thereafter, the Trial Judge repeated the error, saying: '' *If you find that he did know the nature and quality of his act* OR *that the act was wrong* and the People have proved beyond a reasonable doubt all the essential elements of the crime, *then it is your duty to determine what crime the defendant is guilty of,* starting with the degrees of that crime as I have heretofore outlined them to you in my charge.'' (Emphasis supplied.)

Again, the court was incorrect for if the jury merely found one or the other of the statutory elements, and not both, it could not properly have gone on to consideration of the degrees of homicide.

Error was thus committed and it was substantial error, since it went to the heart of the sole defense interposed by the defendant. It is urged upon us, however, that since the court in earlier parts of the charge quoted the language of section 1120 and properly noted with reference to the two subdivisions thereof that " one or the other of those two things is all that can excuse ", we should assume that the jurors — each of the twelve of them — followed the court when it was correct and disregarded the charge when it was incorrect. In other words, we are asked to assume that the jurors, faced with two opposite and mutually exclusive charges as to the rule, had the wit and ability, with unanimity, to adopt the right one and reject the wrong one. We think the statement of the thought contains its refutation. The courts may frequently indulge in assumptions that jurors " are capable of and do perform extraordinary intellectual feats " in civil cases in order to achieve an approximate justice, but rarely, if ever, when " the stake is the life of a person conceivably innocent ". *(People* v. *Sherwood, supra,* p. 434.)

Nor can we overlook the error as technical and not affecting a substantial right of the defendant under section 542 of the Code of Criminal Procedure. (See *People* v. *Marendi,* 213 N. Y. 600, 618–620.) The question of defendant's sanity at the time of the commission of the homicide, which depended in turn upon the proof by the People beyond a reasonable doubt that defendant both knew the nature and quality of his act and knew that it was wrong, was the only real issue in the case and the only one on which the jury, as a practical matter, could have had any serious discussion. Above all else on this record, the charge on the law concerning that subject should have been clear and unambiguous. Instead, it was contradictory and must have been perplexing and confusing to an attentive juror. Despite the fact that it was inadvertent, such a mistake in charging the law on the sole defense interposed, necessitates a reversal of the judgment of conviction.

Since there must be a new trial, we note that the court's charge was inadequate in another particular. There was evidence by the People's witnesses that some weeks before the homicide the defendant, a businessman in Kingston, had driven slowly down Main Street of that city in an automobile in the

early part of the afternoon following the deceased and her daughter and grandchild who were walking on the sidewalk; that he then used foul and abusive language and threatened '' to get you all ''; that when deceased smiled, defendant shouted: '' You can laugh all you want to, tomorrow is the day, I am going to kill you ''; and that, weeks later, on the morning of the homicide and immediately preceding it, the defendant was parked in an automobile on the same Main Street, at nine o'clock in the morning, wearing a hunting cap, carrying a rifle, and with an alarm clock, which he used when hunting, in the back seat of the automobile. At the trial, the People relied upon that evidence to establish premeditation and deliberation on the part of defendant. The court in its charge specifically quoted that evidence three several times treating it solely as proof to support a finding of guilt through premeditation and deliberation. That evidence, however, also had a real bearing upon the question of defendant's mental state, but the court did not specifically charge its relevancy on the subject of insanity. From the court's instructions, the jurors might well have been led to conclude that that evidence offered by the People could properly be considered only as proof, on behalf of the prosecution, to point to defendant's guilt and support a conviction. They were not adequately apprised of the fact that the evidence adduced by the People may, by its very nature, have within it proof that defendant was not responsible for his actions.

In a case such as this, where so much depended upon the jurors' proper understanding of the relevancy and value of the evidence with respect to the defense of insanity, the court was under a duty to take particular pains to clarify the matter by instructing that *the People's proof* might also be examined and weighed in reaching a decision on the question of criminal responsibility under section 1120 of the Penal Law.

The judgment of conviction should be reversed and a new trial ordered.

LEWIS, J. (dissenting). In formulating procedural rules by which criminal law is administered in this State, the Legislature has made it mandatory that '' After hearing the appeal, the court must give judgment, without regard to technical errors or defects * * * which do not affect the substantial rights

of the parties." (Code Crim. Pro., § 542; and see *People* v. *Sprague,* 217 N. Y. 373, 379.) In the circumstances of record in this case, we regard as innocuous to the defendant's rights the error which prompts a majority of the court to favor reversal of the judgment of conviction and a new trial.

The record makes it clear that the sole defense interposed by the defendant was that at the time of the homicide his insanity excused him from criminal liability — under section 1120 of the Penal Law — for the death of Elouise McHugh.

The court is divided upon the question whether the charge by the Trial Judge left with the jury a presentation of the defendant's defense of insanity which met the requirements of section 1120 *id.* In view of that disagreement the quotation in full of that statute may contribute to an understanding of the point on which our views diverge :

" § 1120. IRRESPONSIBILITY OF IDIOT OR LUNATIC.

" An act done by a person who is an idiot, imbecile, lunatic or insane is not a crime. A person can not be tried, sentenced to any punishment or punished for a crime while he is in a state of idiocy, imbecility, lunacy, or insanity so as to be incapable of understanding the proceeding or making his defense.

" A person is not excused from criminal liability as an idiot, imbecile, lunatic, or insane person, except upon proof that, at the time of committing the alleged criminal act, he was laboring under such a defect of reason as :

" 1. Not to know the nature and quality of the act he was doing; *or,*

" 2. Not to know that the act was wrong." *

Our views differ upon the point made by the defendant that his rights were prejudiced when the Trial Judge — after repeatedly applying correctly section 1120 to the evidence of record — misapplied the disjunctive " or " as it appears in the last sentence of that statute, quoted (*supra*).

Immediately following that portion of the charge relating to the statutory presumption that a person is responsible for his acts (Penal Law, § 815), the Trial Judge read to the jury verbatim section 1120 of the Penal Law. In doing so the record

---

* Wherever in this opinion the word " or " is italicized or capitalized the italics or capitals are supplied for the purpose of emphasis.

shows that the disjunctive " or.", as it appears in the text quoted (*supra*), was read. Thereafter, following a statement of circumstances in which it becomes a defendant's duty to go forward with evidence designed to rebut the statutory presumption of legal responsibility for the act for which he is on trial — the Trial Judge laid emphasis upon the application of section 1120 *id.* In doing so, as will be seen, he employed correctly four successive times the statutory disjunctive " or ":

" * * * the law, says that no person shall take the life of a human being and seek to escape responsibility for it on the plea or on the ground that he is odd or peculiar or that he has a loss of memory or amnesia, unless there is proof that tends to show that the person committing the act at the time of committing it had such a defect of reason as not to know the nature and quality of the act that he was committing *or* not to know that the act was wrong. *One OR the* other of these two things is all that can ever be the basis of excusing anybody for the commission of a crime or the committing of a criminal act.

" In considering the question of this defendant's alleged insanity, as defined by the law, it will not be for you to ask, ' Was he like other people? Was he normal or abnormal? ' because that will not answer the question that you have to decide at all. The thing that you have to find out is whether he, at the time he committed the alleged act, [had] such a defect of reasoning as not to know the nature and quality of the act that he was doing *or* not to know that the act was wrong.

" Now, those, ladies and gentlemen of the jury, are the only two things; *one OR the* other of those two things is all that can excuse, if it be the basis of excusing anybody for the commission of a crime or the doing of a criminal act."

Again, in the course of his reference to testimony which related to the defendant's defense of insanity, the Trial Judge instructed the jury as to the application of section 1120 and in doing so the disjunctive " or " was correctly used. " If, after hearing and fully considering the testimony of the defendant herein and the testimony of Dr. Davidoff and the other witnesses produced by the defendant, there is reasonable doubt of whether the defendant knew the nature and quality of the act he was doing *or* knew that the act was wrong, then you must resolve that doubt in favor of the defendant because the

People have not proved him guilty beyond a reasonable doubt and therefore your verdict must be not guilty.''

Immediately thereafter — for the seventh time — the jury was correctly instructed as follows: '' I charge you that mere weakness of mind or impairment of mental strength or lapse or loss of memory or amnesia are not sufficient to excuse the defendant for the commission of a criminal act unless such weakness or impairment of mental condition or loss of memory or amnesia resulted in such a defect of reasoning as prevented him from knowing the nature and quality of the act he did *or* knowing that it was wrong.''

Then followed the portion of the charge, to which the opinion of Judge CONWAY refers, wherein the Trial Judge — in an attempt to rephrase section 1120 in the affirmative rather than in the negative form as it appears in the text — neglected to substitute the conjunctive '' and '' for the disjunctive '' or '':

'' I charge you that, if, on this evidence and on all the facts and circumstances, included in it, both the evidence of the defendant and the evidence of the People, you come to the conclusion beyond a reasonable doubt that the defendant fired the shot that killed Elouise McHugh and that he knew the nature and quality of the act *or* that he knew that it was wrong, then he is responsible in law for the act which he did and it is a jury's duty to so declare.

'' If you find that he did know the nature and quality of his act *or* that the act was wrong and the People have proved beyond a reasonable doubt all the essential elements of the crime, then it is your duty to determine what crime the defendant is guilty of, starting with the degrees of that crime as I have heretofore outlined them to you in my charge.''

We cannot believe that, after being instructed correctly seven times as to the proper application of section 1120, the misapplication of the disjunctive '' or '' — in the portion of the charge last quoted above—misled the jury or was such an error as adversely affected the defendant's substantial rights. Our conclusion in that regard is confirmed when we consider the following incident which occurred when, at the close of the charge, the Trial Judge afforded counsel for the defendant the usual opportunity to suggest further instructions to the jury:

"Mr. Napoletano [counsel for the defendant]: The defendant requests the Court to charge the jury in order to find that the defendant knew that the act was wrong, the jury must find beyond a reasonable doubt that the defendant knew that the act was forbidden by law and also knew that according to the accepted standards of mankind, it was also condemned as an offense against good morals.

"The Court: I so charge."

In *People* v. *Sherwood* (271 N. Y. 427), upon which the majority opinion relies, a reversal of a judgment of conviction was based upon a number of errors of which one involved a repetitive misstatement of section 1120 as defining the mental state of a defendant which will excuse him from criminal liability. In that case, however, the error, according to the opinion per CROUCH, J., was " * * * complicated with a reference to ' some mental disease,' *i.e.,* some pathological condition, instead of a ' defect of reason,' as the statute reads." That such complication had an important bearing upon that decision is indicated by the further statement in the opinion (p. 433) — " No disease, no pathological condition, existed or was claimed to exist."

Before the responsibility is assumed for reversing a judgment of conviction there must be found legal error of substance, sufficient to justify the belief that by such error the defendant was deprived of a fair trial. (*People* v. *Dixon,* 231 N. Y. 111, 121.) Finding in the record before us no error so substantial in its effect upon the defendant's rights as to warrant a reversal of the judgment of conviction and a new trial, we dissent and vote for affirmance.

LOUGHRAN, Ch. J., FULD and FROESSEL, JJ., concur with CONWAY, J.; LEWIS, J., dissents in opinion in which DESMOND and DYE, JJ., concur.

Judgment of conviction reversed, etc.