THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. DENNIS BUTHY, Appellant.

Fourth Department, December 9, 1971.

*Paul Ivan Birzon* for appellant.

*Michael F. Dillon, District Attorney* (*Thomas P. Cleary* of counsel), for respondent.

WITMER, J. After two trials (see 33 A D 2d 986) in which juries found the defendant guilty of assault in the first degree, we are reluctantly constrained to reverse the second judgment of conviction and grant a third trial, solely because of prejudicial error in the court's instructions to the jury.

Upon this appeal defendant also has urged three other grounds for reversal, and we shall dispose of them before considering the trial court's charge. Defendant contends that the evidence was insufficient to support the jury's finding that defendant was responsible for his conduct. Defendant was charged with savagely attacking a young woman elevator operator in the elevator which she was operating, as a result of which she received skull fractures, wounds in the groin, a fractured pelvis, broken finger, and multiple cuts and bruises. Defendant interposed the defense of insanity, and, of course, this placed the burden of proving his sanity upon the People (*People* v. *Kelly,* 302 N. Y. 512), and the court so charged the jury.

The People and defendant each called three psychiatrists to testify concerning defendant's mental condition. Two of each set of psychiatrists had testified on the first trial. Each of defendant's psychiatrists, one of whom had examined defendant before the date of this crime, testified at length concerning defendant's history and the interviews each had with him and concluded that at the time of the crime defendant lacked substantial capacity to know or appreciate the nature and quality of his act or that it was wrong. Their conclusions were based upon findings that the defendant was schizophrenic, paranoid type, had delusional trends leading him to commit senseless assaults on women, and had been hospitalized on several occasions in the period from November, 1965 to June, 1967. The People's psychiatrists, two of whom had examined defendant before the crime at Buffalo State Hospital where he had been referred on some occasions after he had been treated at E. J. Meyer Memorial

Hospital, drew contrary inferences from defendant's history and their interviews with him. It must be observed that one of these psychiatrists refused to express an opinion as to whether defendant was sane at the time of the crime because she felt that she could make no judgment as to a person's mental condition except at such times as she was examining him. With respect to his conduct and condition at all the times at which she examined defendant, she agreed with the other two doctors for the People that he understood the nature and consequences of what he was doing. These other two psychiatrists testified that the defendant had a psychopathic or sociopathic personality, had unreasonable ideas rather than delusional thinking, and that although he was dangerous, he was not mentally ill. All three of the People's psychiatrists, two of whom interviewed defendant just three days after the crime, found that his thinking was clear and logical and that his actions were well-planned and thought out. They concluded, with the exception of the one psychiatrist noted, that the defendant had the capacity to know the nature of his acts and that they were wrong. One of these psychiatrists added that even if defendant were suffering from schizophrenia at the time of the crime, he still had the capacity to know and appreciate his acts.

The defendant's psychiatrists expressed the view that the diagnosis made by the People's witnesses may have been influenced by the fact that defendant had received medication at E. J. Meyer Hospital before being referred to Buffalo State Hospital on the various occasions prior to the crime. As a result of this medication, they stated, he was then in a state of remission and hence his psychosis was not observed there. On the other hand, the People attacked the credibility of one of the defendant's witnesses by developing the fact that he had diagnosed defendant as "not psychotic" and had discharged him from hospitalization on May 24, 1967.

A question of fact was thus presented to the jury as to defendant's mental capacity and state at the time of the crime. The jury had the right to accept or reject the opinion of any expert (*People* v. *Wood*, 12 N Y 2d 69, 77; *People* v. *Horton*, 308 N. Y. 1, 12; *People* v. *Sherwood*, 271 N. Y. 427, 429–430). In *People* v. *Wood* (*supra*, p. 77) and in *People* v. *Horton* (*supra*, p. 12) the court quoted from an earlier opinion as follows: " ' the determination of the jury will not be interfered with, unless it is clearly against the weight of the evidence, or appears to have been influenced by passion, prejudice, mistake or corruption.' " Although the psychiatric evidence for the defense seems considerably stronger than that for the People, the verdict has support in the

record and may not be upset on the ground of insufficiency of the evidence.

Two of the People's psychiatrists had treated defendant under circumstances in which he sought their assistance as a private patient. Defendant contended that the information which they thus obtained was privileged. At a pretrial hearing the court precluded the People from introducing any such testimony. In the defendant's case, defendant introduced evidence to prove his insanity. He thereby waived the privilege accorded him by CPLR 4504 (subd. [a]) (*Steinberg* v. *New York Life Ins. Co.,* 263 N. Y. 45, 51; *McKinney* v. *Grand St. Prospect Park & Flatbush R. R. Co.,* 104 N. Y. 352, 355; *Matter of Beeler* v. *Hildan Crown Container Corp.,* 26 A D 2d 163, 165; *Matter of Trotta* v. *Ward Baking Co.,* 21 A D 2d 701; *Kriger* v. *Holland Furnace Co.,* 12 A D 2d 44, 47–48; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4504.15). The waiver results when the issue has been put in controversy (*Koump* v. *Smith,* 25 N Y 2d 287, 294). This argument of the defendant is, therefore, without merit.

Defendant also contends that the court erred in refusing to conduct a second *Wade* hearing (*United States* v. *Wade,* 388 U. S. 218) after the reversal of the first conviction. Such a hearing had been held before the first trial and defendant's objection to the complainant's identification testimony was denied. He did not appeal from the order of denial, although he had the opportunity to have it reviewed on that prior appeal. The court refused to grant a second *Wade* hearing because no new evidence or ground for suppression of complainant's testimony was asserted. We agree that defendant was not entitled to a retrial of that concluded issue.

This brings us to the question of the charge. Section 30.05 of the Penal Law provides in part as follows: " 1. A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either: (a) The nature and consequence of such conduct; or (b) That such conduct was wrong."

Before the charge defendant's attorney submitted certain requests to charge to the Trial Judge. They contained the substance of the language required by the statute, that the People must prove beyond a reasonable doubt that the defendant possessed substantial capacity to know and appreciate the nature and consequence of his conduct and that it was wrong. It is observed that where the statute provides that one is not criminally responsible for his acts if he lacked capacity to know or appreciate the nature and consequence of his conduct or that the conduct was wrong, the proof of criminal responsibility, to con-

vict, must be in the affirmative that he knew *and* appreciated the nature and consequence of his conduct *and* that such conduct was wrong.

In charging on this subject, on six occasions the court instructed the jury that the People must prove that defendant knew *or* appreciated the nature and consequences of his conduct and that it was wrong. At the conclusion of the charge defendant's counsel called this to the court's attention, excepted to it and requested that the court charge on that subject in accordance with the defendant's previously submitted written requests to charge. The court refused such request, and defendant excepted thereto.

The District Attorney concedes that defendant's requests were proper (and see *People* v. *Thompson,* 34 A D 2d 1097, and *People* v. *Buthy,* 33 A D 2d 986) and that the court erred on the six occasions when he charged " know or appreciate ". He contends, however, that on some occasions the court charged substantially in the language of the statute and sufficiently explained the meaning of his words " know or appreciate " by saying, " They mean that the defendant must be — must have an awareness coupled with some understanding of his conduct. Simply stated then, substantial capacity to know or appreciate means such mental ability to understand. This is the only standard to be applied when considering the effect of the defendant's mental disease or defect, if you find that he had a mental disease or defect." It is true that by turning to isolated portions of the court's charge and ignoring certain other misleading portions one could find the substance of the statutory requirement. But where the court on six occasions virtually charged the rejected *M'Naghten* rule, it can hardly be said that the law on this subject was properly explained to the jury. For us to affirm the judgment under this charge would not only do an injustice to this defendant but would tend to perpetuate an erroneous charge.

After two juries have convicted the defendant of this crime, we are reluctant to reverse on the apparent slight deviation by the court from the required statutory provisions. One not acquainted with the principles involved might well think it very pedantic and impractical to insist on the correct wording, particularly to laymen on a jury. In fact, upon the argument the District Attorney contended that a jury did not and could not understand the fine analyses of the defendant made by the respective psychiatrists. But the legislative history of this subject, the efforts made to change the prior rule in this field, known as the *M'Naghten* rule, and the studies made and reports submitted

to the Legislature which led to the amendment of the law (Penal Law, § 30.05, subd. 1 [1965]) constrain us to require that a charge on insanity follow the revised statute with understandable clarity.

In response to increasing criticism of the *M'Naghten* rule the Governor had appointed a commission to make a study. Concerning this rule and commission report the Court of Appeals (*People* v. *Adams*, 26 N Y 2d 129, 134) said: "This commission reported in 1958 * * * that the then-current statute containing the *M'Naghten* rule should be amended to overcome three major objections. First, it was reported that a difficulty arose in the use of the word 'know' in *M'Naghten* because a defendant might be able to verbalize that some act is wrong and yet have no depth of understanding as to what this means. Another defect with *M'Naghten* was said to be its emphasis on the actor's cognitive capacity. The commission noted that the *M'Naghten* test disregarded the notion that an individual might have minimal awareness of some fact and at the same time lack the ability to control his conduct in the light of this. Finally, the commission stated that *M'Naghten* taken on its face called for total impairment of the ability to know, whereas in even the most extreme psychoses it is impossible to say that the actor was totally bereft of knowledge or control." The Legislature declined to adopt the recommendation that the inability to conform one's conduct to the requirements of the law should furnish a ground for lack of criminal responsibility. However, the Legislature did incorporate the recommended language " substantial capacity to know or appreciate " (Penal Law, § 30.05, subd. 1). The obvious intent in this amendment was to permit the defense of insanity even though the defendant possessed some surface knowledge of the nature and quality of his act and that such act was wrong (see Practice Commentary, McKinney's Cons. Laws of N. Y., Book 39, Penal Law, § 30.05, pp. 48–49).

In this light, the court's failure to charge expressly that the defense was made out if the People failed to prove that the defendant possessed substantial capacity to know *and* appreciate the requisite elements constitutes reversible error. This is especially true, since the distinction between the words " know " and " appreciate " was central to the psychiatric testimony offered at trial. The three expert witnesses for the defendant each emphasized that distinction, as noted above, and each offered the opinion that the defendant was unable to *appreciate* the nature, consequences and wrongfulness of his acts. Dr. Wilinsky, testifying for the People, in some portions of his testimony stated his

opinion that the defendant had the ability to *know* the nature and wrongfulness of his conduct; he did not, in those portions, make careful use of the statutory language.

It can hardly be said that the court's error in this respect was not prejudicial, for the court may have permitted the jury to find defendant criminally responsible on a standard of proof less than that imposed by law. In cases rather similar on their facts, like arguments have been rejected and the convictions set aside (*People* v. *Kelly,* 302 N. Y. 512, 515–517, *supra*; *People* v. *Sherwood,* 271 N. Y. 427, 432–433, *supra*). In each of the cited cases, under the former Penal Law the trial court had failed to make clear that the People must prove that a defendant knew the nature and consequences of his acts *and* that these acts were wrong. The principles there stated have application here and require reversal.

The judgment of conviction must, therefore, be reversed and a new trial granted.

MOULE, J. (dissenting). Defendant has twice been convicted of assault, first degree, for the brutal attack with a meat cleaver and knives on a girl. There is no question that he committed the act but on each trial the defense of insanity was raised.

The first conviction was reversed because '' the People failed to establish beyond a reasonable doubt that the defendant had substantial capacity to know and appreciate the nature and consequences of his conduct and that such conduct was wrong.'' (*People* v. *Buthy,* 33 A D 2d 986.)

On the second trial, two psychiatrists testified on the People's case that defendant had substantial capacity to know and appreciate the nature and consequences of his act and that it was wrong. Three psychiatrists testified that defendant lacked such substantial capacity. The majority concedes that there was sufficient evidence for the jury's finding that defendant was criminally responsible for his conduct, but would reverse because the trial court used the phrase '' know or appreciate '' a number of times when, according to the majority, the phrase '' know and appreciate '' should have been used.

Section 30.05 of the Penal Law provides in part that '' a person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity to know or appreciate either: (a) The nature and consequence of such conduct; or (b) That such conduct was wrong.'' That section places the burden on the People to prove that a defendant knew and appreciated the nature and consequences of his act and that it was wrong. Conversely, a defend-

ant is entitled to acquittal if the People fail to prove any of these elements.

In three of the instances where the court used '' or '', it was setting forth the possible findings that would require acquittal and, therefore, the use of ''know or appreciate'' was correct. In the other instances, the court was discussing the People's burden of proof but did not use ''know and appreciate''. However, the court did read to the jury the exact language of section 30.05 of the Penal Law and from the entire charge it was made clear to the jury that if the People failed to prove that defendant knew and appreciated the nature and consequences of his act and that it was wrong, he was entitled to an acquittal. Since the charge as a whole correctly sets forth the law to be applied by the jury, the instances where the court used '' or '' instead of '' and '' do not necessitate a reversal. (See *People* v. *Lynch,* 23 N Y 2d 262, 270; *People* v. *Bloeth,* 9 N Y 2d 211, and *People* v. *Fitzgerald,* 26 A D 2d 712.)

The court in its charge covered the two essential elements which were, in effect, that defendant was not criminally responsible unless he fully understood the nature and consequences of his conduct and that such conduct was wrong. I do not believe that it was necessary to use the exact words of the statute. In any event, the fine distinction in meaning and significance between the words '' know '' and '' appreciate '' was sufficiently clarified, although they have been defined as meaning the same thing and are synonymous.[1]

*People* v. *Kelly* (302 N. Y. 512) and *People* v. *Sherwood* (271 N. Y. 427) cited by the majority are not in point. In each of those cases, the court erroneously instructed the jury that the People had to prove either that defendant knew the nature and consequences of his act or knew that it was wrong.

I would affirm the conviction.

GABRIELLI and CARDAMONE, JJ., concur with WITMER, J.; MOULE, J., dissents and votes to affirm in an opinion; GOLDMAN, P. J., not participating.

Judgment reversed on the law and a new trial granted.

---

1. Webster's New Twentieth Century (Unabridged) Dictionary defines "know" as: To perceive with certainty, to understand clearly, to be aware or cognizant of, to have a firm mental grasp of. It defines "appreciate" as: To be conscious of the significance, to be fully or sensitively aware of. Roget's Thesaurus 474.12 states that "know" and "appreciate" are synonymous.