**Arthur George POST, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 2851.**

Supreme Court of Alaska.

June 9, 1978.

34. *Id.*

Arthur George Post, pro se.

Thomas Fenton, Fairbanks, for appellant.

Peter A. Michalski, Asst. Dist. Atty. and Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

OPINION

MATTHEWS, Justice.

Arthur George Post picked up a 17 year old hitchhiker, threatened to shoot her if

she attempted to escape, and drove her to his cabin where he forced her to perform oral sex acts. He attempted to have sexual intercourse with her, but was physically incapable of doing so. Post then tied the arms and legs of his victim. She eventually escaped, after having been held prisoner for 20 hours. Post was convicted of kidnapping and assault with intent to rape. On appeal he contends that he should have been granted a bifurcated trial on his insanity defense; that certain evidence was erroneously admitted to his prejudice; and, that his sentence is excessive. We will deal with these issues in turn.

I

Post requested a bifurcated trial in which the question of whether he had committed the acts charged would be tried to a jury; if the jury found against him, the question of whether he was sane would be tried to the judge. When his request was denied he waived his right to a jury and the trial was conducted by the court.

AS 12.45.083(d) grants a defendant pleading insanity a unilateral right to waive a jury trial.[1] Post argues that this statute permits him to waive a jury trial on the issue of insanity, while retaining a jury trial on all other issues. We do not agree. The statute refers only to waiver of "a jury trial", which we interpret to refer to all issues ordinarily tried to a jury. There is no basis for an inference that the legislature intended to create a statutory right to a bifurcated trial.

The question remains, however, whether the trial court abused its discretion in not permitting a bifurcated trial. Bifurcated trials often are appropriate where insanity is a defense. There is a danger of prejudice when a jury charged with deciding whether a defendant committed a crime also hears evidence that he was insane at the time of the crime. At the least, the defendant's credibility suffers. Moreover, there may be some tendency to resolve doubts concerning whether the defendant committed the act in favor of finding him not guilty by reason of insanity, instead of an outright acquittal, in order to assure confinement in a mental hospital. *Holmes v. United States*, 124 U.S. App.D.C. 152, 363 F.2d 281 (1966). Further, when a court appointed psychiatrist examines a defendant he often inquires into the facts of the crime charged. If the defendant tells the psychiatrist that he committed the crime and the psychiatrist is permitted to testify to that effect, the privilege against self-incrimination would be seriously eroded without a bifurcated trial. *See, Schade v. State*, 512 P.2d 907, 919 (Alaska 1973).

We held in *Kinsman v. State*, 512 P.2d 901, 904 (Alaska 1973) that the question whether there should be a bifurcated trial was committed to the trial court's discretion and would be reviewable on appeal only for abuse. We find no abuse of discretion here. Post made no showing prior to trial of any potential conflict between his insanity defense and his defense on the facts charged. Such a showing is required. *Contee v. United States*, 133 U.S.App.D.C. 261, 410 F.2d 249 (1969); *Parman v. United States*, 130 U.S.App.D.C. 188, 399 F.2d 559 (1968).

II

Approximately one month before committing the acts charged Post consulted a psychiatrist, Dr. John Morris. The State subpoenaed Dr. Morris to testify concerning

1. AS 12.45.083(d) provides:

*Mental disease or defects excluding responsibility.*

. . . . .

(d) When a person offers a defense based on mental disease or defect excluding responsibility for his criminal conduct, he may waive a jury trial without the consent of the state.

Post's consultation. Post objected claiming the psychotherapist-patient privilege. The objection was overruled. Dr. Morris testified that Post had told him that he had feigned psychosis and mental illness in the past in order to avoid prosecution for criminal activity. Dr. Morris stated that in his opinion Post had a sociopathic personality and no serious mental illness. Dr. Morris further testified that Post was very sophisticated in the use of the language of psychiatry.

In *Allred v. State*, 554 P.2d 411 (Alaska 1976) we recognized a common law psychotherapist-patient privilege in criminal cases. We also recognized that the privilege could be waived. *Id.* at 418 n. 18. We now hold that the privilege is waived by the assertion of a defense of insanity as to communications which are relevant to that defense.

The psychotherapist-patient privilege protects a patient from embarrassment or humiliation which might result from disclosure of his statements to a psychiatrist.[2] It is necessary to speak frankly concerning one's inner feelings to a psychiatrist for therapy to be effective. It is thought that few would do so unless such communications were protected from disclosure. When one claims to be insane in a public trial, however, the humiliation which may be associated with the exposure of one's inner self is disregarded in order to achieve another end, and the basis for the psychotherapist-patient privilege is largely eliminated. Moreover, we believe that it would give a defendant an unfair advantage at trial to allow him to claim insanity and to prohibit the prosecution from obtaining what may be the most reliable evidence available on the subject from the defendant's treating psychiatrist.[3]

Our holding is in accordance with Rule 504(d)(1) of the proposed Alaska Rules of Evidence. That rule excepts from the psychotherapist-patient privilege "communications relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which the condition of the patient is an element of the claim or defense of the patient . . . ." A model psychotherapist-patient privilege act proposed in Harvard Journal of Legislation contains a similar exception.[4] Cases holding a waiver when insanity is raised as a defense include *People v. Givans*, 83 Ill. App.2d 423, 228 N.E.2d 123 (1967) and *People v. Buthy*, 38 A.D.2d 10, 326 N.Y.S.2d 512 (1971). *See also*, Annot., 44 A.L.R.3rd 24 § 32 (1972). The only contrary case to

2. *City & County of San Francisco v. Superior Court*, 37 Cal.2d 227, 231 P.2d 26, 28 (1951) was a personal injury action involving physician-patient privilege, in which the court addresses this point:

> The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.

3. To be distinguished is the protection which may be afforded by an extension of the attorney-client privilege to testimony of a psychiatrist who examines a defendant at the request of defense counsel and whose findings are not offered by the defense. We make no ruling covering that situation. *United States v. Alvarez*, 519 F.2d 1036 (3rd Cir. 1975); *People v. Lines*, 13 Cal.3d 500, 119 Cal.Rptr. 225, 531 P.2d 793 (1975).

4. Note, A State Statute To Provide a Psychotherapistpatient Privilege, 4 Harv.J.Legis. 307, 321–22 (1966–67). *Compare*, R. Fisher, The Psychotherapeutic Professions and the Law of Privileged Communications, 10 Wayne L.Rev. 609, 643–44 (1964), in which there is set out a model act which does not provide for waiver of the psychotherapist privilege by a claim of insanity in criminal cases. Similar is the Conn. Gen.Stat. §§ 52–146 (c–f) (Cum.Supp.1978) which was drafted by a distinguished committee of lawyers and psychiatrists. Goldstein & Katz, Psychiatrist-Patient Privilege: The GAP Proposal and the Connecticut Statute, 36 Conn. B.J. 175 (1962). The legislatures of Florida and

which we have been cited is *Taylor v. United States*, 95 U.S.App.D.C. 373, 222 F.2d 398 (1955). The ruling in that case, however, was promptly overturned by what is now D.C.Code § 14–307(b)(2) (1973) which provides that the privilege does not apply to "evidence relating to the mental competency or sanity of an accused in criminal trials where the accused raises the defense of insanity . . . ." *Douglas v. United States*, 99 U.S.App.D.C. 232, 239 F.2d 52 (1956).

■ Post also argues that Dr. Morris should not have been allowed to express an opinion as to his probable mental state when he committed the acts charged because Dr. Morris' consultation was an insufficient foundation for such an opinion. This testimony was not objected to on that basis at trial; therefore, we will not consider this claim of error.[5]

■ Shortly after Post was arrested, Investigator Kaiser of the Alaska State Troopers conducted a lengthy recorded interview. The recording was transcribed. During the interview Post made many incriminating statements. At the trial the prosecution offered to play the tape after Investigator Kaiser had authenticated it. Post's attorney objected on the basis that much prejudicial and irrelevant material would thereby come before the court. The objection was sustained and the court instructed the prosecutor to offer into the record those portions of the transcript which he regarded as relevant. Post's counsel was given an opportunity to object to portions of the transcript as they were offered. Post's attorney did object to the admissibility of a statement by Post that he had broken into a trailer to get some food after he had been in the bush with nothing to eat for some ten days. We agree that this evidence was irrelevant; however, it was not prejudicial. Therefore, we find this error harmless. We fail to see how proof that a starving man broke into an unoccupied trailer to obtain food could have any impact on the determinations reached by the trial court.

■ On four other instances allegedly irrelevant and prejudicial evidence was read into the record by Investigator Kaiser. Post's counsel did not object at trial and we decline to consider these claims of error here.[6]

## III

For his conviction for assault with intent to commit rape[7] Post was given the maximum sentence of 15 years. For his conviction of kidnapping Post was given the maximum sentence of life imprisonment.[8] The terms are to be served consecutively. One effect of his sentence is that Post will not be eligible for parole until he has served at least 20 years, although it may not be assumed that Post will then be paroled.[9] Post

Illinois have utilized the Connecticut statute as a model, but have added a provision for waiver of the privilege in criminal proceedings in which the defendant introduces his mental or psychological condition as an element of his defense. Fla.Stat.Ann. § 490.32(2)(b) (Cum. Supp.1977); Ill.Ann.Stat.Ch. 91½ § 406 (Smith-Hurd).

5. *Fruit v. Schreiner*, 502 P.2d 133, 143 n. 32 (Alaska 1972).

6. *See*, footnote 5.

7. AS 11.15.160 provides:

*Assault with intent to kill or commit rape or robbery.* A person who assaults another with intent to kill, or to commit rape or robbery upon the person assaulted, is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

8. AS 11.15.260 provides:

*Kidnapping.* A person who knowingly and without lawful reason kidnaps, abducts or carries away and holds for ransom, reward or other unlawful reason another person, except in the case of a minor by his parent, is punishable by imprisonment for a term of years or for life.

9. AS 33.15.080 provides:

*Granting of parole.* If it appears to the board from a review that a prisoner eligible for parole will, in reasonable probability, live and remain at liberty without violating the laws, or without violating the conditions imposed by the board, and if the board determines that his release on parole is not incompatible with the welfare of society, the board

argues that the trial judge was clearly mistaken in passing this harsh sentence.

In *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970) we identified four sentencing goals: rehabilitation of the offender, isolation of the offender from society, deterrence of the offender after his release and of others disposed to commit similar acts, and community condemnation of the offender because of his acts. In our view Post's sentence does not reflect an inappropriate balance of these factors.

Post was convicted of two most serious crimes. Both involve violation of the personal integrity of another; both are often associated with serious injury or death of the victim. The kidnap-rape of hitchhiking women is an all too common crime in our society and should be strongly condemned. The sentence here expresses appropriate community condemnation of these acts and may well serve to deter others who might be inclined to commit them in the future. Likewise the sentencing goal of isolation of a dangerous person from the rest of society has been met. The only remaining question is whether the goal of rehabilitation was given too little weight by the sentencing judge.

The court found that the possibility of rehabilitation was very slight. Post was 37 years old when sentenced. He had been convicted of five counts of arson and one count of attempted arson in Texas in 1964. In 1966, also in Texas, Post was found not guilty by reason of insanity of two counts of threatening the life of the United States President. In 1967 in Alaska he was found not guilty by reason of insanity of being a felon in possession of a firearm, larceny in a building, and receiving and concealing stolen property.

There is a difference of opinion among the four psychiatrists who testified as to whether or not Post has a serious mental illness. Dr. Joseph Bloom stated that Post suffers from chronic paranoid schizophrenia. Dr. Francis Whelan agreed. Drs. Harold South and John Morris expressed opinions that Post has no serious mental illness, but has feigned insanity in order to avoid criminal responsibility. Drs. Whelan and Morris emphasized that he is extremely dangerous.

Post has received treatment in mental hospitals. He was treated in Austin State Hospital in Texas in 1955 and again in 1962, at Atascadero State Hospital in California in 1962, at Rusk State Hospital in Texas in 1964, at the Medical Center for Federal Prisoners at Springfield, Missouri in 1964 and 1966, at Wynn Treatment Center in Texas in 1964, 1965 and 1966, and at the Alaska Psychiatric Institute in 1968.

The trial court found that Post was not insane. The court also found that prior institutional efforts to assist Mr. Post in becoming a non-criminal member of society had failed, and in view of these failures, there is no substantial likelihood that further efforts will succeed. We believe that conclusion is reasonable and that the superior court was not clearly mistaken in imposing the sentence it did.

AFFIRMED.

BOOCHEVER, C. J., concurs.

BOOCHEVER, Chief Justice, concurring.

Although the facts of this case are quite similar to those of *Morrell v. State*, 575 P.2d 1200 (Alaska 1978), in which I dissented in part, I am in agreement with the disposition of the sentence appeal in Post's case. In *Morrell*, I dissented because of my belief that a sentence for forcible rape convictions imposed consecutively to a life sentence for kidnapping was excessive. Morrell had no prior convictions of any kind, a favorable military service record with honorable termination, stable and competent regular employment and a favorable psychiatric report lacking any description of mental or emotional problems, all of which are in direct

may authorize the release of the prisoner on parole. However, no prisoner may be released on parole who has not served at least one-third of the period of confinement to which he has been sentenced, or in the case of a life sentence, has not served at least 15 years.

contrast with the record pertaining to Post. In view of Post's background and reports pertaining to his highly dangerous potentialities, I agree that the judge in imposing the consecutive sentences in this case was not clearly mistaken.