**UNITED STATES ex rel. William WAX,
Petitioner,**

v.

**Frank J. PATE, Respondent.**

**No. 67 C 1612.**

United States District Court
N. D. Illinois, E. D.

Dec. 4, 1967.

Jason E. Bellows and Charles A. Bellows, Chicago, Ill., for petitioner.

William G. Clark, Atty. Gen. of Ill., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Petition for a Writ of Habeas Corpus

William Wax, who was sentenced to 20–35 years on a murder conviction by the Circuit Court of the Fifth Judicial Circuit of Illinois, Edgar County, on January 27, 1965, seeks his release on a writ of habeas corpus. His conviction was affirmed by the Appellate Court for the Fourth District on September 26, 1966, in People v. Wax, 75 Ill.App.2d 163, 220 N.E.2d 600. The Illinois Supreme Court denied leave to appeal on January 18, 1967, and the Supreme Court of the United States denied certiorari on May 29, 1967, at 387 U.S. 930, 87 S.Ct. 2051, 18 L.Ed.2d 991.

The issue urged here was asserted in all of the proceedings below. In essence, petitioner alleges that he was deprived of his Sixth Amendment right to counsel, in that he was examined by a psychiatrist prior to trial, at the state's request, without notice to his retained counsel and in counsel's absence. The psychiatrist subsequently testified at trial as a prosecution witness to the effect that petitioner was sane at the time of the commission of the offense. Petitioner alleges that the time of the examination constituted a "critical stage" of the prosecution and that the denial of counsel at that point constitutes a violation of his right to effective assistance of counsel.

The right to effective assistance of counsel has been applied at stages of the prosecution where the Supreme Court has considered denial of that right to vitiate the accused's guarantee of a fair trial. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),

the right to counsel was applied to the trial itself, and in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), to the appellate level.

These cases, and others,[1] have construed the Sixth Amendment guarantee to apply to the "critical" stages of the prosecution. And most recently, in a provocative trilogy of cases, the Supreme Court required the exclusion of identification evidence which was tainted by the exhibition of the accused to identifying witnesses prior to trial in the absence of counsel. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and see Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 1199 (1967). Those cases held, inter alia, that a post-indictment "lineup" is a critical stage of the prosecution, and condemned the practice of exhibiting suspects singly to identifying witnesses. *Wade* defined a "critical" stage as follows: (at 226, 87 S.Ct. at 1932)

> "It is central to that principle [right to counsel] that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial."

As Mr. Justice Black put it in his concurring and dissenting opinion in *Wade*: (at 246, 87 S.Ct. at 1942)

> "And I agree with the Court that a lineup is a 'critical stage' of the criminal proceedings against an accused, because it is a stage at which the Government makes use of his custody to obtain crucial evidence against him."

The narrow issue presented by this petition is whether a psychiatric examination requested by the prosecution and conducted by a doctor of its designation, who testifies adversely to the defendant at trial on the issue of insanity constitutes a "critical stage" of the prosecution requiring notice to and the presence of the defendant's attorney.

The parties are in virtual agreement that the facts as set forth by the Appellate Court when it affirmed defendant's conviction, are essentially accurate. For that reason, we did not deem it necessary to hold an evidentiary hearing, and are prepared to make our ruling on the legal issues discussed in the briefs.

The facts of the occurrence, as related by the Appellate Court at 75 Ill.App.2d at 176–177, 220 N.E.2d at 607, are these:

> "It is contended that this case must be reversed and remanded for a new trial by reason of the nature of an examination made of the defendant by Dr. Grove Smith, a psychiatrist acting at the request of the State's Attorney. This examination was made on September 23rd at the jail in Paris. It will be recalled that the first examination of Dr. Greenfield was on September 19th. The only evidence upon this examination was elicited from Dr. Smith upon cross-examination. He stated that he called at the jail and that he saw the defendant and asked his name. Dr. Smith identified himself as a doctor making an examination at the request of the State's Attorney. Following such introduction, it appears that the defendant and the doctor had no conversation, but that for about 20 minutes there was silence and presumably, mutual observation. Dr. Smith then asked the defendant if he had ever been in the Army, Navy or Marine Corps, and said that the defendant shook his head to signify no. There followed another interval of silence and then the defendant asked to have the sheriff get his attorney. Dr.

1. See Hamilton v. Alabama, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R. 3d 974 (1966); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

Smith testified that he stated that he would be glad to have the attorney present, and the latter arrived shortly. He testified that he told the attorney that he wished to examine the defendant with his permission, but that no further examination was conducted after such conversation. It appeared that the defendant stood mute."

As in the instant petition, Wax made no claim before the Appellate Court that his Fifth Amendment privilege against self-incrimination has been violated. The Appellate Court nevertheless stated its belief "that the presence or absence of the element of self-incrimination is a key factor in the resolution of this proposition." (75 Ill.App.2d at 177, 220 N.E.2d at 607).

The Court went on to determine the issue within the framework of a Fifth Amendment analysis, rather than squarely addressing itself to the Sixth Amendment ground asserted by the petitioner. In denying relief, the Court relied on Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). *Schmerber* held that the defendant's Fifth Amendment privilege was in no way violated by the prosecution's use at trial of evidence of a blood sample taken involuntarily from defendant. Hence, Schmerber was not entitled to claim the privilege against self-incrimination, which applies only to "evidence of a testimonial or communicative nature", and the Supreme Court held there to be no issue of denial of counsel with respect to any rights which he did possess.

The Appellate Court regarded the instant right to counsel argument as governed by the same principles used in *Schmerber*. It stated: (at 179–180, 220 N.E.2d at 608)

"It appears, therefore, under the authorities that the occasion when Dr. Smith and the defendant mutually observed one another prior to the arriving of defendant's counsel, there was, in fact, no testimonial compulsion as to inculpating matters. There being no valid question of constitutional dimensions upon the issue of self-incrimination, we believe that the issue raised as to the deprivation of the benefit of counsel is controlled by Schmerber v. California * * *. Here, as in Schmerber, no issue of counsel's ability to assist in respect of any right which he did possess was presented. * * * "

The *Wade* trilogy was decided on June 12, 1967, subsequent by 14 days to the date the United States Supreme Court denied certiorari in the instant case. In *Wade,* the court observed that compelling a defendant merely to exhibit his person for observation by a prosecution witness prior to trial involves no issue of testimonial compulsion which could raise an issue of self-incrimination in violation of the Fifth Amendment privilege. However, the Court significantly went on to explore the Sixth Amendment right to counsel argument upon which it rendered its landmark holding. The explanation of the reason that issue was significant in *Wade,* and not of consequence in *Schmerber,* is of decisive importance to the scope of our deliberations herein. The Court asserted: (388 U.S. at 223–224, 87 S.Ct. at 1930)

"The fact that the lineup involved no violation of Wade's privilege against self-incriminaton does not, however, dispose of his contention that the courtroom identifications should have been excluded because the lineup was conducted without notice to and in the absence of his counsel. Our rejection of the right to counsel claim in *Schmerber* rested on our conclusion in that case that '[n]o issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented.' 384 U.S. at 766 [86 S. Ct. 1826, at 1833, 16 L.Ed.2d 908]. In contrast, in this case it is urged that the assistance of counsel at the lineup was indispensable to protect Wade's most basic right as a criminal defendant—his right to a fair trial at which the witnesses against him might be meaningfully cross-examined."

It immediately becomes apparent that the instant petitioner is not challenging his conviction because it rested upon some form of "testimonial compulsion", as the Appellate Court seemed to believe he was and as Schmerber did, but because the lack of notice to his counsel allegedly deprived counsel of the opportunity to consult with his client and perhaps with his own medical expert as well, and to suggest to the court proper procedures or conditions for conducting the examination.[2] In *Wade*, the Supreme Court distinguished a lineup from the merely preparatory steps in the gathering of the prosecution's evidence, such as "systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like." (at 227, 87 S.Ct. at 1932). The Court's justification was as follows: (at 227–228, 87 S. Ct. at 1932)

> "We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial."

The petitioner urges that unlike the aforementioned preparatory evidentiary steps, and like a lineup, a psychiatric observation or examination constitutes a "critical stage" of the proceedings.

He urges in his brief: (at page 3 thereof)

> "We believe the court can take judicial notice of the fact that a psychiatric examination bears little resemblance to a test in which blood is drawn, mixed with chemicals, after which a reaction is noted by the technician. Psychiatric examinations do not partake of such easy evaluation. Therefore, the giving of notice to counsel to enable him to consult with petitioner and with his own expert so that he may suggest to the court the proper procedures, would seem to be required by concepts of fundamental fairness, as well as the explicit right to counsel contained in the Sixth Amendment."

 It is an accepted fact of which the court will take notice that the results of psychiatric observations and examinations are often a good bit more conjectural than the results of scientific laboratory tests on fingerprints, blood samples, hair and the like. The variables in technique are many. And indeed, considerable ferment has been engendered as to the sufficiency of the present legal tests of insanity.

We would consequently agree that Wax raises an issue at least "colorable", so that we should consider his Sixth Amendment argument in the same framework as did the Supreme Court in *Wade*—that is, determining whether he was denied effective assistance of counsel at a "critical" stage of the proceedings—rather than rejecting it on Fifth Amendment grounds as did the Appellate Court herein on the basis of *Schmerber*. In fairness, it should again be noted that the Appellate Court acted prior to the decision in *Wade*.

 However, we are impelled to the conclusion that a psychiatric observation or examination, as described herein, does not constitute a "critical" stage of the proceedings, constitutionally requiring notice and the presence of counsel,

---

2. Petitioner does not explicitly argue that the lack of notice and his counsel's absence from the meeting with Dr. Smith deprived him of the opportunity to conduct "meaningful" cross-examination at trial.

and automatically vitiating Wax's conviction. Although "the procedure followed by the State's Attorney was possibly not the most desirable", as the Appellate Court stated, we do not believe it was constitutionally defective, unless petitioner can show some positive prejudice. Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); Madison v. Tahash, 249 F.Supp. 600 (D. Minn.1966).

The considerations which prompted the holding in *Wade* are not present here and indeed have not been urged by petitioner. In determining what constitutes a "critical" stage of the proceedings, the Supreme Court is chiefly concerned that the absence of counsel does not derogate from the defendant's right to a fair trial. The "identification" cases presented a situation "peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." (at 228, 87 S.Ct. at 1933).

The chief danger described by the Court in *Wade* was the high "degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." Numerous examples were cited of instances where the suggestive influences utilized upon identification witnesses were all but certain to result in positive identifications. The Court said: (at 229, 87 S.Ct. at 1933)

" * * * Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.

"Moreover, '[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial'." quoting from Williams & Hammelmann, Identification Parades, Part I, [1963], Crim.L. Rev. 479, 482.

In view of the dangers of suggestion inherent in a confrontation between the accused and the victim or witnesses to a crime, the court felt that the presence of counsel might avert prejudice and assure a meaningful confrontation at trial through counsel's increased awareness of the facts of the pretrial identification, and consequent ability to meaningfully cross-examine the witness. The following quotations from the Wade opinion give significant insights into the reasons for the Court's conclusions:

" * * * In any event, neither witnesses nor lineup participants are apt to be alert for conditions prejudicial to the suspect. And if they were, it would likely be of scant benefit to the suspect since neither witnesses nor lineup participants are likely to be schooled in the detection of suggestive influences. Improper influences may go undetected by a suspect, guilty or not, who experiences the emotional tension which we might expect in one being confronted with potential accusers. Even when he does observe abuse, if he has a criminal record he may be reluctant to take the stand and open up the admission of prior convictions. Moreover, any protestations by the suspect of the fairness of the lineup made at trial are likely to be in vain; the jury's choice is between the accused's unsupported version and that of the police officers present. In short, the accused's inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification." (230–232, 87 S.Ct. 1934)

"Insofar as the accused's conviction may rest on a courtroom identification in fact the fruit of a suspect pretrial identification which the accused is helpless to subject to effective scrutiny at trial, the accused is deprived

of that right of cross-examination which is an essential safeguard to his right to confront the witnesses against him. Pointer v. Texas, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923]. And even though cross-examination is a precious safeguard to a fair trial, it cannot be viewed as an absolute assurance of accuracy and reliability. Thus in the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself. The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—'that's the man'." (235–236, 87 S.Ct. 1936)

In the instant situation, the dangers of suggestion relied upon in *Wade* are totally absent. Although techniques to ascertain the defendant's mental status may vary depending upon the examining psychiatrist, in no examination conducted under recognized medical standards should there be a danger that "the trial which might determine the accused's fate may well not be that in the courtroom, but that at the pre-trial confrontation * * *" In sum, the dangers of overreaching which are inherently present in identification situations, are inherently lacking at pre-trial psychiatric observations or examinations. Although the better practice, as recognized by the Rules of the Illinois Supreme Court and Rule 35 of the Federal Rules of Civil Procedure, is to require a court order before subjecting a party to a physical or mental examination, no constitutional concerns of right to counsel are as pressing in this regard as they are to lineups or other identification situations.

In addition, unlike the identification cases, counsel's right to conduct effective cross-examination should not be hindered by his absence at the pre-trial examination. Whatever risk there might be by the absence of counsel from the examination is minimal at most, and in our judgment, does not derogate from the accused's right to a fair trial. Indeed, petitioner does not raise the argument that his counsel will be able to conduct a less effective cross-examination if absent from the preliminary psychiatric examination.

If an insanity plea is to be raised at trial, defense counsel will routinely conduct his own pre-trial psychiatric examination, and present his own expert witnesses at trial. The jury will then be compelled to evaluate the relative credibility of the experts, based in part upon their testimony on cross-examination.

Hence, the other major argument relied upon in *Wade*—that counsel can conduct more effective cross-examination if present at a lineup—is also lacking in the instant situation.

It is true that former Rule 17–1 and present Rule 215 of the Illinois Supreme Court, Ill.Rev.Stat.1967, c. 110A, § 215, contain requirements of notice. But it is equally true that neither provides for the presence of counsel. Nor do the guidelines laid down in State v. Whitlow, 45 N.J. 3, 210 A.2d 763 (1965), cited by defendant, provide for the presence of counsel at a pre-trial physical or mental examination. In our judgment, lack of notice in these situations goes only to the degree of actual prejudice suffered by the defendant, rather than constituting an argument in support of petitioner's contention that the psychiatric examination was a "critical" stage of this proceeding. Cf. People v. Lang, 37 Ill.2d 75, 224 N.E.2d 838 (1967).

Defendant's argument that he could have consulted his lawyer and his lawyer an expert, does not amount to the kind of inherent danger recognized in the lineup cases We think those arguments too, might have merit only where the defendant makes a showing of actual prejudice, and cannot be extended to

create an additional stage of the proceedings said to be "critical".

Since none of the constitutional deficiencies said to be inherent where a defendant lacks counsel at a lineup appear to be inherent where he lacks counsel at a pre-trial psychiatric examination, we conclude that the "critical stage" rationale of United States v. Wade has no application to such an examination.[3]

There may well be situations where the manner in which a pre-trial psychiatric or physical examination is conducted in the absence of counsel, may prejudice the defendant's right to a fair trial. Those should be dealt with as they occur, and if actual prejudice is shown, a new trial should be granted. All we are saying here is that the same dangers to a fair trial which exist in the case of a lineup where counsel is not present, are not in the picture in the case of a pretrial examination in the absence of counsel.

Absent a showing that the procedure utilized in the instant case resulted in actual prejudice to petitioner which denied him due process as guaranteed by the Fourteenth Amendment, we must deny his petition for habeas corpus.

█ It is manifest that no actual prejudice has been shown herein. No arguments have been made on this ground by petitioner, so that the following language of the Appellate Court must be recognized as dispositive: (75 Ill.App.2d at 181, 220 N.E.2d at 609).

"* * * [W]e cannot, in the exercise of judgment upon the whole course of proceedings, conclude that there was an actual deprivation of defendant's constitutional rights, nor any offense to canons of decency, fairness and conscience. A judgment will not be reversed because of absence of counsel where there is no possibility of prejudice to the defendant. People v. Taylor, 32 Ill.2d 165, 204 N.E.2d 734; Walton v. United States, 92 U.S.App. D.C. 26, 202 F.2d 18."

The petition for a writ of habeas corpus is denied.

---

3. We need not consider the additional practical problems raised where a defendant is institutionalized in a mental hospital or like facility, for a short period for examination. The prognosis in such situations, is often made as much on the basis of mere observation, as was done here, as it is based on actual psychiatric examination. Would petitioner require his attorney to be present throughout the period of confinement, or only at the times he was being observed, or only at the time of actual examinations? The practical problems of an all encompassing constitutional mandate based on *Wade*, as applied to this issue, are apparent.