PEOPLE *v.* HILLIKER

1. CRIMINAL LAW—ATTORNEY AND CLIENT—ATTORNEY'S AGENT—PRIVILEGED COMMUNICATIONS.

   Psychiatrist's testimony and written conclusions that he believed that the defendant was feigning amnesia concerning the events of the murder for which he was tried were inadmissible where the psychiatrist was employed to assist counsel in preparation of a defense, because the testimony and written conclusions fall within the attorney-client privilege.

2. ATTORNEY AND CLIENT—ATTORNEY'S AGENTS—PSYCHIATRIST—PRIVILEGED COMMUNICATION.

   The attorney-client privilege extends to confidential communications made to an attorney by an agent on behalf of his client, such as a doctor or psychiatrist.

3. CRIMINAL LAW—ATTORNEY AND CLIENT—ATTORNEY'S AGENT—PRIVILEGED COMMUNICATIONS—REVERSIBLE ERROR.

   Defendant's conviction is reversed where a psychiatrist, hired by the defendant to examine him and aid in the preparation of his defense, was called by the people and testified as to his diagnosis that defendant was feigning insanity where the defense was insanity.

4. HOMICIDE—MANSLAUGHTER CONVICTION—IMPLIED ACQUITTAL.

   A defendant, charged with first-degree murder and convicted of manslaughter is impliedly acquitted of first-degree and second-degree murder; on retrial, the defendant cannot be charged with or convicted of either first-degree or second-degree murder.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  21 Am Jur 2d, Criminal Law §§ 30, 48, 53.
[2]  21 Am Jur 2d, Criminal Law §§ 363, 364, 366, 368.
[3]  21 Am Jur 2d, Criminal Law §§ 48, 49, 69, 357, 365.
[4]  40 Am Jur 2d, Homicide §§ 542–544.

Appeal from Wayne, Blair Moody, Jr., J. Submitted Division 1 November 9, 1970, at Detroit. (Docket No. 7990.) Decided January 20, 1971.

Norman G. Hilliker was convicted of manslaughter. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Robert L. Coburn,* for defendant on appeal.

Before: V. J. Brennan, P. J., and Levin and Peterson,* JJ.

V. J. Brennan, P. J. Defendant was charged with first-degree murder contrary to MCLA § 750-.316 (Stat Ann 1954 Rev § 28.548) and was found guilty by a jury of the lesser included offense of manslaughter.[1]

On May 29, 1968, the defendant, who was temporarily residing at the Inn America Motel in Southgate, Michigan, encountered two out-of-town guests of the motel, Edward Bodway and Harry Hovis. They asked defendant to suggest some local night spots to visit that evening. He named several places, but declined their invitation to accompany them.

At about 2:30 a.m. the next morning, defendant was returning from an outing with some friends which entailed a considerable amount of drinking. As he was walking to his room he saw the deceased, Harry Hovis, standing in the open doorway of Room

---

* Circuit judge, sitting on the Court of Appeals by assignment.
1 MCLA § 750.321 (Stat Ann 1954 Rev § 28.553).

14. The two men started a conversation; defendant spent several hours drinking with "Harry" and "Eddie" in their room.

During this time, Eddie went out to his car and brought back a .45-caliber pistol to show to defendant. Upon seeing it, defendant remarked that he had a .32-caliber Beretta in his room. They asked him to get it and shortly thereafter he went for the gun. From this point on there is conflicting testimony as to what actually occurred.

Edward Bodway testified that when defendant began shooting at a parked car with the Beretta, he became afraid and sought to leave. The motel manager said that Mr. Bodway awakened her and asked her to call him a cab. He informed her that there were two guns over there and "someone was going to get hurt". He then proceeded to the airport, ostensibly to catch a flight home.

Defendant stated that Eddie tried to leave several times, but was restrained by Harry. At one point, Harry fired the .45-caliber pistol into the wall when Eddie threatened to leave. These facts were denied by Eddie at trial.

In response to a call from the motel manager, the police arrived in time to hear several shots being fired. As they entered the hallway, they saw defendant walk out of Room 14 with the Beretta in his hand. He complied with their order to drop the gun and was arrested. Harry Hovis was found shot to death with the .45-caliber pistol.

Defendant interposed the defense of insanity. He stated that he didn't remember Eddie leaving the room or anything else concerning the balance of the evening.

Defendant raises four issues on appeal, one of which requires reversal.

Defendant's first contention is that the trial court committed prejudicial error in admitting the testimony and written report of Dr. William Gordon, a psychiatrist, into evidence. We agree.

The alleged inability of defendant to remember any of the details of the shooting caused defense counsel great difficulty in preparing for trial. As a result, Dr. William Gordon was employed to examine the defendant concerning his claimed amnesia and to assist in preparing a defense. At the Wayne County Jail, Dr. Gordon interviewed the defendant for several hours and submitted a report based on the interview. He also made the following written conclusions:

"I find no evidences of psychosis or major psychoneurosis. I believe this man does have a deepseated character and behavior disorder. I also am of the opinion he knows much more about this offense than he cares to admit or acknowledge. I see no indication for administering sodium pentathol. I do believe a polygraph would be of some considerable interest. I personally would refrain from using any pentathol or intravenous drugs here because I feel this man is purposely and consciously withholding information and is not being open, honest and direct about what he does know about this offense."

At the trial, the prosecutor's attempts to introduce parts of the report into evidence and to call Dr. Gordon as a prosecution witness were met with vigorous objection. After long argument on the record, the court ruled in favor of admitting the evidence. Thereafter, Dr. Gordon took the stand and gave very damaging testimony to the effect that defendant was feigning insanity. The court also permitted the prosecutor to question Dr. Gordon concerning the above-quoted conclusions in his report.

We are of the opinion that the testimony and report of Dr. Gordon ought to have been excluded on the ground that it falls within the scope of the attorney-client privilege.[2]

The case of *Lindsay* v. *Lipson* (1962), 367 Mich 1, is instructive. There, the plaintiff's attorney sought to have the plaintiff examined by a doctor in order to properly prepare for trial. When the defendant attempted to call the doctor to take the stand, plaintiff objected on two grounds: (1) the physician-patient privilege and (2) the attorney-client privilege. After dismissing the former contention, the court said:

"This brings us to the query whether under the situation presented the common-law rule as to privileged communications between attorney and client applies here. This court has in prior decisions been inclined for obvious reasons to give a somewhat liberal interpretation to said rule. *People* v. *Pratt* [1903], 133 Mich 125 (67 LRA 923), and decisions there cited. Doubtless such interpretation is essential to a proper protection of the rights of the client. Had Mrs. Lindsay possessed the requisite training and skill to make an accurate appraisal of her physical condition and to draw reasonable conclusions therefrom as to probable future developments any communication by her to her attorney of such appraisal and diagnosis would without question have been privileged and she could not have been examined as a witness with reference thereto. To accomplish the desired result the attorney representing her deemed it necessary to employ a medical expert to act for him and his client and to convey

---

[2] Although the ground of objection asserted at trial was the physician-patient privilege, MCLA § 600.2157 (Stat Ann 1962 Rev § 27A.2157), we review the error alleged here on the basis of our power to notice and correct grave errors which seriously affect substantial rights of the accused. *People* v. *Jordan* (1967), 7 Mich App 28.

to him on behalf of his client the information that he needed in order to properly prepare his pleadings and to try the cases that the parties intended to institute. We thing such procedure was within the scope of the privilege attending the relation of attorney and client." *Lindsay* v. *Lipson, supra,* 5, 6.

Although the *Lindsay* case was a civil suit, the reasoning of the Court is equally applicable to a criminal case: since the privilege clearly extends to confidential communications made directly by the client to the attorney, there is nothing to dictate a different result where that communication is made to the attorney by an agent on behalf of the client, such as a doctor or psychiatrist. See *Jones* v. *The Superior Court of Nevada County* (1962), 58 Cal 2d 56 (372 P2d 919); *People* v. *Lee* (1970), 3 Cal App 3d 514 (83 Cal Rptr 715). In these complex times the attorney-client privilege would be greatly eroded unless the client is allowed to communicate through an expert whose services are needed to prepare for trial.

In the case at bar Dr. Gordon was defendant's agent for the transmission of confidential facts to his attorney in furtherance of the attorney-client relationship. As such, both the report[3] and testimony of Dr. Gordon were protected from disclosure as privileged communications. Since it cannot be said that the error was harmless, the conviction must be reversed and the cause remanded for a new trial.

Our decision on this first issue makes unnecessary a discussion of the remaining issues raised by defendant.

For the aforementioned reasons, the judgment of the lower court is reversed and the cause remanded

---

[3] The privilege applies to written as well as oral communications. See *City and County of San Francisco* v. *The Superior Court of the City and County of San Francisco* (1951), 37 Cal 2d 227 (231 P2d 26), which was relied upon in the *Lindsay* case.

for a new trial.   Since the jury's verdict convicting
Hilliker of manslaughter impliedly acquitted him of
first- and second-degree murder, on retrial he cannot
be charged with or convicted of either of these of-
fenses.   *People* v. *Deneweth* (1968), 14 Mich App
604; *People* v. *Farrell* (1906), 146 Mich 264.
    Reversed and remanded.
    All concurred.