Filed 10/8/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TERRY ZIMMERMAN, | D064531 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. SCD235172) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Original proceeding on a writ of prohibition. Denied.

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy, Matthew Braner and Robert Ford, Deputy Public Defenders, for Petitioner.

No appearance on behalf of Respondent.

Bonnie M. Dumanis, District Attorney, Laura E. Tanney and Martin E. Doyle, Deputy District Attorneys, for Real Party in Interest.

This petition for writ of prohibition filed by Terry Zimmerman, the former attorney for defendant Denise Michelle Goodwin, challenges the superior court's adjudication of contempt against Zimmerman. The court found Zimmerman in direct, continuing contempt for failing to answer certain questions regarding the circumstances under which she came into possession of specific evidence (a portfolio and mail) relevant to the prosecution's case against Goodwin. Zimmerman contends that the evidence was delivered to her in some way by Goodwin's agent or agents; thus, the circumstances of the delivery as well as Zimmerman's observations regarding the delivery are protected by the attorney-client privilege.

This is a case of first impression. Although Zimmerman cites two California cases that mention a defendant's use of an agent to deliver evidence to defense counsel (*People v. Meredith* (1981) 29 Cal.3d 682 (*Meredith*) and *People v. Lee* (1970) 3 Cal.App.3d 514 (*Lee*)), neither case involved an actual finding of agency in a criminal context. Instead, Zimmerman presents a novel argument whereby she contends a prima facie showing of the existence of the privilege can be satisfied by an attorney representing to the court that she received evidence through the defendant's agent or agents.

The party asserting the existence of a privilege bears the burden of establishing it exists. (*Mahoney v. Superior Court* (1983) 142 Cal.App.3d 937, 940-941 (*Mahoney*).) On the record before us, Zimmerman did not satisfy her burden because she offered almost no evidence that would allow the court to determine the existence of agency, which is generally a question of fact. Without the existence of agency, Zimmerman's

2

claim of privilege necessarily failed and the superior court's order for Zimmerman to answer the subject questions was lawful and proper. Further, the court's citation and later adjudication of contempt also were proper.

We are mindful that Zimmerman cannot be compelled to disclose the content of an allegedly privileged communication to allow the court to determine if the privilege exists. However, we are not willing to expand the law of privilege to allow an attorney to claim the privilege exists in an agency situation without proving the preliminary fact of agency.

The petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Goodwin is the defendant in San Diego Superior Court case no. SCD235172. She is charged with first degree murder (Pen. Code, § 187, subd. (a)) with a special circumstance that she committed the murder for financial gain (Pen. Code, § 190.2, subd. (a)(1)). Goodwin also is charged with 10 other felony counts related to her fraudulent conversion of the victim's property.

Zimmerman is a deputy public defender. Zimmerman was assigned to represent Goodwin from September 2011 through the end of April 2012. On April 16, 2012, Zimmerman lodged with the superior court a large manila envelope containing: (1) a zippered leather portfolio holding various documents, including a will and trust related documents and other papers purporting to belong to the victim (Gerald Rabourn); and (2) another envelope containing eight items of unopened mail addressed to Rabourn. The court provided the prosecution and the defense the opportunity to object to the court's

3

release of these items to the District Attorney. No party objected and the items were released.

For reasons unrelated to this petition, Zimmerman was subsequently transferred by her office to Vista and a new deputy public defender was assigned to represent Goodwin.

By serving Goodwin's new counsel with a request for prosecution discovery, the prosecution attempted to discover certain information about the documents released by the court, specifically "the identification of any individuals and their contact information, other than [Goodwin], who handled or possessed the evidence at any time, and/or provided information concerning the evidence, its location, and any movements or alterations made to such evidence." These efforts proved unsuccessful. Ultimately, the prosecution filed a motion to compel production of evidence and Zimmerman's testimony about the documents. Goodwin's counsel opposed the motion, arguing that (1) Zimmerman provided ineffective assistance of counsel because she accepted the documents and turned them over to the court; (2) the documents should be excluded under Evidence Code section 352; and (3) the information the prosecution sought was protected by the attorney-client privilege.

On August 29, 2013, the court heard the prosecution's motion to compel. After considering the pleadings and listening to oral argument, the court found that Goodwin's current counsel had not shown that Zimmerman rendered ineffective assistance of counsel. The court noted that the prosecution had "announced [its] intention to call Ms. Zimmerman at trial as a witness" and found it "likely . . . that [Zimmerman] is going to claim the attorney-client privilege." Thus, the court set an Evidence Code section 405

4

hearing to address the issue. In doing so, the court reminded the parties that the party claiming the attorney-client privilege had the burden to show the privilege applies.

The court held the Evidence Code section 405 hearing on September 3, 2013. During the hearing, Zimmerman testified, but refused to answer certain questions. Specifically, Zimmerman invoked the attorney-client privilege in response to the following questions:

1. When did the portfolio first come into your possession?

2. When did the mail first come into your possession?

3. Did you take possession of the portfolio and the mail at the same time?

4. Where were you when you first took possession of the portfolio?

5. Where were you when you first took possession of the mail?

6. From whom did you receive the portfolio?

7. From whom did you receive the mail?

8. Did you take possession of the items during a confidential communication with Goodwin?

9. Who, other than yourself, handled any of the mail items?

10. Did you direct a third party to go to a location to retrieve the portfolio?

11. Do you know the location of the portfolio before it came into your possession?

12. How long did the portfolio and its contents remain in your possession?

After hearing argument from the parties regarding whether the requested information was privileged, the court found that the attorney-client privilege did not

5

apply and ordered Zimmerman to answer the questions and explained the consequences of her failing to answer them. Zimmerman respectfully refused to do so. The court concluded that its orders that the questions be answered were lawful orders and cited Zimmerman for contempt for her refusal to answer the questions.

The court invited Zimmerman and Goodwin's counsel to provide additional information in camera to support their position that the attorney-client privilege applied. After conducting further proceedings in camera, the court's ruling remained unchanged. The court ordered the parties and Zimmerman to return the next day for the contempt adjudication and the imposition of any sanction.[1]

When the parties returned the next day, Zimmerman was present, as were counsel for Goodwin, and the prosecution. The court again entertained argument from all counsel and afforded Zimmerman the opportunity to address the court in camera. The court had previously warned Zimmerman on the record, on multiple occasions, that her refusal to answer the questions was contemptuous and the consequences that might flow from the refusal. The court found that Zimmerman's refusal to answer the questions propounded was a direct act of contempt. The court repeated the questions. The court found that Zimmerman understood the questions, had the ability to answer, knew of the court's ruling that they were lawful questions, yet willfully refused to answer. The court further

---

[1] At the September 3 hearing, the court indicated its willingness to forgo any adjudication if the contempt citation itself was subject to a petition for a writ. The parties agreed to research the issue and address it the following day. At the September 4 hearing, the court agreed with the prosecution that the citation was not subject to a petition for a writ. Therefore, the court proceeded with the adjudication of contempt hearing.

found this act was done in the court's immediate view and presence. In addition, the court made these findings beyond a reasonable doubt.

The court then addressed the imposition of sanctions. It allowed Zimmerman an opportunity to offer any evidence or commentary in mitigation. Zimmerman pointed out that her "actions [were] taken in good faith, that [she] did not refuse to answer the court's questions to be belligerent or recalcitrant, that [she] do[es] honestly believe that [her] client has an attorney-client privilege with regard to questions that [she] refused to answer and [she] do[es] believe [she] [is] under an obligation to protect her confidences at a peril to [her]self." Zimmerman also stated that she believed she had answered almost all the questions in camera.

Zimmerman's counsel stressed Zimmerman's distinguished career with the San Diego Public Defender's Office where she tried only the most difficult cases for 30 years, during which time she demonstrated the highest ethical standards. The court agreed, noting Zimmerman's competence and commitment to the defense function, stating, "it was safe beyond any doubt to conclude that she'd not done these acts precipitously or without a good deal of soul searching, and would not have done them, . . . in the way that she did if she did not feel the law required it."

Nevertheless, the court sentenced Zimmerman to custody under Code of Civil Procedure section 1219, subdivision (a) so that she would remain in custody until she testified or the proceedings were concluded. The court ordered Zimmerman to be remanded into the custody of the sheriff on September 10 at 10:00 a.m., unless that order of execution of custody was stayed by a further order of any court. The court also stated

7

that if Zimmerman sought appellate review of the contempt order, it would grant a stay of execution on the custodial sanction until September 16.

The court issued written findings and an order regarding contempt.

Zimmerman filed her petition for a writ of prohibition on September 9, 2013. On September 11, this court stayed the superior court's order requiring Zimmerman to report for custody pending resolution of the matter and ordered informal responses from the prosecution and Goodwin's counsel. The prosecution filed an informal response, to which Zimmerman filed an informal reply.

DISCUSSION

This matter concerns the scope of the attorney-client privilege. "The fundamental purpose of the attorney-client privilege is, of course, to encourage full and open communication between client and attorney." (*Meredith*, *supra*, 29 Cal.3d at p. 690.) This rationale acquires particular magnitude in the criminal context: " 'As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice.' . . . Thus, if an accused is to derive the full benefits of his right to counsel, he must have the assurance of confidentiality and privacy of communication with his attorney." (*Barber v. Municipal Court* (1979) 24 Cal.3d 742, 751, citing *Fisher v. United States* (1976) 425 U.S. 391, 403.)

The Evidence Code sets forth the requirements of the attorney-client privilege. (See Evid. Code, § 950 et seq.) Evidence Code section 954 provides in relevant part a

8

client "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." Evidence Code section 952 protects "confidential communication between client and lawyer," including "a legal opinion formed and the advice given by the lawyer in the course of that relationship." The privilege protects the disclosure of communications between attorney and client. It does not protect disclosure of the underlying facts which were communicated (*Coy v. Superior Court* (1962) 58 Cal.2d 210, 219-220; *Upjohn Co. v. United States* (1981) 449 U.S. 383, 395-396), and it does not extend to independent witnesses (*D.I. Chadbourne, Inc. v. Superior Court* (1964) 60 Cal.2d 723, 737). However, "the attorney-client privilege is not strictly limited to communications, but extends to protect observations made as a consequence of protected communications." (*Meredith*, *supra*, 29 Cal.3d at p. 693.)

Here, Zimmerman maintains that the prosecution's questions relating to her obtaining possession of the portfolio and mail seek information protected by the attorney-client privilege. Although the record is somewhat sparse and we are careful not to divulge any of the information Zimmerman has provided under seal, Zimmerman concedes in her petition that she did not receive either the portfolio or the mail directly from Goodwin. Zimmerman further argues she, "to accommodate the court," "eventually made clear she received through agents evidence which she ethically provided to the court."

When a party asserts the attorney-client privilege, it is incumbent upon that party to prove the preliminary fact that a privilege exists. (*Mahoney*, *supra*, 142 Cal.App.3d at

9

pp. 940-941.)  Because Zimmerman claims the privilege exists here, it is her burden to prove its existence.

Zimmerman claims she made "a sufficient foundational fact/*prima facie*" showing of privilege.  Specifically, Zimmerman argues:

> "In the precise context at issue here, *Lee* and *Meredith* both refer to agents of the client without further definition.  Both refer to agents in the context of persons bringing forth evidence to an attorney; both discuss whether the source of information is protected under the attorney-client privilege.  Both cases were cited to the Court for this proposition.  That should be enough to satisfy a preliminary fact/prima facie claim of privilege."

We are unaware of any situation where the mere citing of case law to support the existence of a preliminary fact (here agency) is sufficient to establish a prima facie claim of attorney-client privilege.  The cases on which Zimmerman relies do not suggest a different conclusion.

In *Meredith*, the victim was robbed and murdered.  One of the defendants (Scott) told his lawyer he took "the victim's wallet, divided the money with Meredith, attempted to burn the wallet, and finally put it in the trash can." (*Meredith*, *supra*, 29 Cal.3d at p. 686.)  The lawyer had his investigator retrieve the wallet from the trash can.  "Counsel examined the wallet and then turned it over to the police." (*Ibid*.)  The admissibility of the wallet was not in dispute but the testimony of the investigator who retrieved it was contested.  Scott claimed the attorney-client privilege prevented the prosecution from calling the investigator and eliciting the location of the retrieved wallet.  Our high court disagreed, holding "that whenever defense counsel removes or alters evidence, the

10

statutory privilege does not bar revelation of the original location or condition of the evidence . . . ." (*Id*. at p. 695.)

Although the court in *Meredith*, *supra*, 29 Cal.3d 682, did not address an agency argument, Zimmerman focuses on a single footnote in that case: "In each of the cases discussed in text, a crucial element in the court's analysis is that the attorney's observations were the direct product of information communicated to him by his client. Two decisions, *People v. Lee* (1970) 3 Cal.App.3d 514 [83 Cal.Rptr. 715] and *Morrell v. State* (Alaska 1978) 575 P.2d 1200 [*Morrell*], held that an attorney must not only turn over evidence given him by *third parties*, but also testify as to the source of that evidence. Both decisions emphasized that the attorney-client privilege was inapplicable because the third party was not acting as an agent of the attorney or the client." (*Meredith*, *supra*, 29 Cal.3d at p. 693, fn. 5, italics in original.) This footnote, however, is not instructive here.

As Zimmerman concedes, the court's discussion of agency in *Meredith* is dicta. In addition, at best, the footnote stands for the proposition that the attorney-client privilege may apply to a situation where a third party, acting as the agent of the defendant, delivers evidence to the defendant's attorney. However, *Meredith*, *supra*, 29 Cal.3d 682 provides no further guidance than this general proposition. It does not tell us under what conditions a court should find agency in this criminal context or what evidence the defendant would have to offer to prove the existence and scope of agency. *Meredith* simply is not helpful regarding the issue before us.

11

Like *Meredith*, *supra*, 29 Cal.3d 682, neither *Lee*, *supra*, 3 Cal.App.3d 514 nor *Morrell*, *supra*, 575 P.2d 1200 are of much use here beyond supporting the principle that the attorney-client privilege may exist when a defendant's agent provides evidence to the defendant. Nevertheless, this uncontroversial principle alone does not support Zimmerman's claim.

In *Lee*, the defendant was charged with attempted murder. (*Lee*, *supra*, 3 Cal.App.3d at p. 518.) The victim appeared to be have been kicked and severely injured. The defendant's neighbors found a pair of work shoes in the shrubbery of their front yard. They heard the defendant's wife had been looking for shoes so they gave them to her. (*Id*. at p. 519.) The defendant's wife then gave the shoes to an investigator for the public defender's office who in turn delivered them to the deputy public defender who had been assigned to represent the defendant. Before being replaced as counsel by a private attorney, the deputy public defender delivered the shoes to a municipal court judge to keep as a " 'private citizen' subject to an appropriate judicial determination respecting their proper disposition." (*Id*. at pp. 524-525.) The district attorney ultimately obtained the shoes with a search warrant. (*Id*. at p. 525.) At trial, the district attorney offered the shoes into evidence and elicited testimony from representatives of the public defender's office that they received the shoes from the defendant's wife. (*Id*. at p. 527.)

The defendant argued that the testimony of the representatives of the public defender's service should have been excluded under the attorney-client privilege. The Court of Appeal disagreed, concluding "the privilege does not protect information coming to an attorney from a third person who is not a client unless such a person is

12

acting as the client's agent." (*Lee*, *supra*, 3 Cal.App.3d at p. 527.) The court noted: "There is no evidence of an attorney-client relationship between the defendant's wife and the public defender's office, nor any evidence that in delivering the shoes to the public defender the wife was acting as defendant's agent or under his direction." (*Ibid*.)

In *Morrell*, the defendant was convicted of kidnap, assault with the attempt to commit rape, and forcible rape. At the defendant's request, his friend cleaned out one of the defendant's vehicles and found a legal pad on which had been written what appeared to be a kidnapping plan. The friend asked the defendant's attorney to come to the defendant's residence to see what he had found. The attorney did so and took possession of the pad on the friend's suggestion. (*Morrell*, *supra*, 575 P.2d at p. 1206.) Eventually, the pad was turned over to the police. The pad became evidence at the defendant's trial and the defendant's counsel offered testimony regarding how he came into possession of it. (*Id*. at p. 1211, fn. 17.)

The defendant appealed his conviction, claiming he received ineffective assistance of counsel because his attorney assisted his friend in turning over the pad to the police and testified about how he came into possession of the pad. In finding the defendant's counsel was not ineffective for testifying, the Alaska Supreme Court, following *Lee*, held: "[I]f the evidence is obtained from a non-client third party who is not acting for the client, then the privilege to refuse to testify concerning the manner in which the evidence was obtained is inapplicable." (*Morrell*, *supra,* 575 P.2d at p. 1210.) Because the defendant's friend was not acting as the defendant's agent when he gave the pad to the

13

defendant's attorney, the court reasoned the defendant's attorney's acquisition of the evidence was not protected by the attorney-client privilege. (*Id*. at p. 1211, fn. 17.)

*Lee*, *supra*, 3 Cal.App.3d 514 and *Morrell*, *supra*, 575 P.2d 1200 imply that the attorney-client privilege could protect information coming to an attorney from a third person who is acting as the client's agent. Yet, neither court found this rule to be applicable on the record before it. In both cases, the identities of the third parties were known as well as the circumstances in which the third parties delivered the evidence to the defendants' respective attorneys. Although the courts did not find that an agency situation existed, there was ample *evidence* on which to base their respective decisions. Here, in contrast, the evidence of agency is meager. The record contains little more than Zimmerman's claim that an agency situation exists. There is a dearth of evidence a court could even consider to determine if agency exists.

In support of her claim that agency exists, Zimmerman also cites to a civil case in which the court found the attorney-client privilege existed. (See *City and County of San Francisco v. Superior Court* (1951) 37 Cal.2d 227 (*City of San Francisco*).) Zimmerman's reliance on this case is misplaced.

*City of San Francisco* was a civil matter in which the plaintiff brought an action for personal injuries against the city and county. At the request of the plaintiff's attorneys, a physician examined the plaintiff and provided his findings to the attorneys for the "sole purpose" to aid the attorneys "in the preparation of a lawsuit for [the plaintiff]." (*City of San Francisco*, *supra*, 37 Cal.2d at p. 231.) During the physician's deposition, he testified there was no physician-patient relationship between the plaintiff

14

and him, he did not advise or treat the plaintiff, and he was an agent of the plaintiff's attorneys. The physician thus refused to answer any questions about the plaintiff's condition, claiming such information was protected by the attorney-client privilege. (*Ibid*.) The Supreme Court agreed with the physician, determining the physician was "an intermediate agent for communication between [the plaintiff] and his attorneys and that [the plaintiff] may therefore invoke the attorney-client privilege . . . ." (*Id.* at p. 234.)

In *City of San Francisco*, the identity of the agent was not a secret. The scope of the agent's authority was known. Here, it bears repeating, the record is much less certain. The number of agents remains a mystery as does their respective identities (if there are indeed more than one). The scope of the alleged agency is unknown. Simply put, while the court in *City of San Francisco*, *supra*, 37 Cal.2d 227 had plenty of facts on which to base its determination that agency existed, we have precious few here. Therefore, the holding of *City of San Francisco* does not advance Zimmerman's argument.

Our independent research did not uncover any reported California criminal case where the court found the delivery of confidential information or evidence by the defendant's agent was protected under the attorney-client privilege. We did find an out-of-state criminal case involving agency and the attorney-client privilege, but that case (*People v. Hilliker* (1971) 185 N.W.2d 831 (*Hilliker*)) has more in common with *City of San Francisco*, *supra*, 37 Cal.2d 227 than the instant matter.

In *Hilliker*, the defendant was convicted of manslaughter. He claimed a defense of insanity because he stated he did not remember much of the evening in question. (*Hilliker*, *supra*, 185 N.W.2d at p. 832.) The defendant's claim of insanity caused

15

defense counsel great difficulty in preparing for trial. As a result, the attorney employed a physician to examine the defendant concerning his claim of amnesia and to assist counsel in preparing a defense. The physician examined the defendant and provided defense counsel with a report wherein the physician concluded the defendant was lying about his inability to remember what had happened. (*Id*. at pp. 832-833.) At trial, the prosecution offered the physician's testimony as well as portions of his report into evidence over defense counsel's objection. (*Id*. at p. 833.)

The Michigan Court of Appeals concluded the physician's testimony and report should have been excluded because both fell within the scope of the attorney-client privilege. (*Hilliker*, *supra*, 185 N.W.2d at p. 833.) The court noted that the physician "was defendant's agent for the transmission of confidential facts to his attorney in furtherance of the attorney-client relationship. As such, both the report and testimony of [the physician] were protected from disclosure as privileged communications." (*Id*. at p. 834, fn. omitted.)

*City of San Francisco*, *supra*, 37 Cal.2d 227 and *Hilliker*, *supra*, 185 N.W.2d 831 offer clear examples of when the presence of a third party, acting as an agent, does not disrupt the attorney-client privilege. In both cases, the agents (physicians) were necessary to transmit certain facts to the clients' respective attorneys to aid those counsel at trial. Zimmerman, however, contends no special skills are required to establish agency. We agree, but the lack of any requirement that an agent possess special skills does not negate the need to establish the existence of the agency as a threshold matter.

16

In her petition, Zimmerman accurately provides a primer on the law of agency. "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) Any person may be authorized to act as an agent. (See *Naify v. Pacific Indemnity Co.* (1938) 11 Cal.2d 5, 7.) Agency may be implied based on conduct and circumstances. (See *Scholastic Book Clubs, Inc. v. State Bd. of Equalization* (1989) 207 Cal.App.3d 734, 737-738.) However, Zimmerman's summary overlooks a key component of the law of agency: "The existence of an agency relationship is usually a question of fact, unless the evidence is susceptible of but a single inference." (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 619.) Because the existence of agency is generally a question of fact, it logically follows that agency must be established with evidence.

Here, there simply is not sufficient evidence for the superior court to have determined the existence of agency. We have scoured the record, including the transcripts filed under seal.[2] We determine there is not any evidence that could establish agency. We do not know if Zimmerman received the portfolio and the mail at the same time. We do not know if Zimmerman contends there is more than one agent. We do not know the identity of the alleged agent(s). In short, we know very little of the circumstances regarding how Zimmerman came into possession of the portfolio and mail.

_____

[2]    We note the People have requested that this court unseal transcripts of in camera proceedings that took place in the trial court and which transcripts petitioner lodged/filed under seal in this court in support of her petition. We have reviewed the sealed transcripts, but have not considered their content in rendering our decision on the petition. We defer to the trial court to determine whether any, all, or part of the transcripts of its in camera proceedings should be unsealed.

On such a sparse record, we cannot contemplate how the superior court would have been able to find agency. We certainly cannot.

We are mindful that a court may not require disclosure of information claimed to be privileged to rule on a claim of privilege. (Evid. Code, § 915; *Gordon v. Superior Court* (1997) 55 Cal.App.4th 1546, 1557 ["[T]he privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case."].) We also acknowledge that the very facts that may establish agency here might be the same facts Zimmerman claims are protected by the privilege. And we do not hold that Zimmerman must disclose the facts she believes are privileged to establish the basis for the privilege. However, most of the questions Zimmerman refused to answer in open court did not call for privileged information. As the superior court noted and we discuss above, Zimmerman refused to answer 12 questions posed by the prosecution. In the context of this case, we deem only two of the questions even arguably ask for privileged information. These are: From whom did you receive the portfolio and from whom did you receive the mail. The other 10 questions do not require Zimmerman to divulge any privileged communication, unless Zimmerman's answers would (1) allow the prosecution to identify the agent or (2) disclose the content of a confidential communication between Zimmerman and Goodwin. Zimmerman makes no such argument in her petition and fails to explain how any of the other 10 questions call for privileged information. For example, we fail to see how the questions about when Zimmerman first came into possession of the portfolio or mail, where she was, if she came into possession of the portfolio and the mail at the same time, or if she directed a

18

third party to retrieve the portfolio, require Zimmerman to divulge any attorney-client privileged information. As such, Zimmerman could have answered the remaining 10 questions without reference to any privileged information.

At the hearing, Zimmerman chose not to offer any facts to establish the existence and scope of agency, be it in camera or in open court. Thus, she is left with the consequences of her decision. Because she claims the privilege exists, it is her burden to establish the existence of the privilege. (*Mahoney*, *supra*, 142 Cal.App.3d at pp. 940-941.) She must offer some facts to support her claim of privilege. This is especially true when the claim of privilege rests on the existence of agency. (Cf. *Violette v. Shoup, supra*, 16 Cal.App.4th at p. 619.) Without offering any facts to prove agency, she faces the strong probability that the court will not find the existence of the privilege established.

If we were to accept Zimmerman's position, we would be creating a much more lenient standard of proving the existence of the attorney-client privilege. She argues it is sufficient to establish the existence of the attorney-client privilege simply by representing to the court that Goodwin's agent gave her the evidence. We find no authority to support this position. In other words, in the criminal context, a defense attorney's representation of agency is not the talisman that protects the circumstances under which the attorney received the evidence absent actual facts to establish agency.

Not unlike the issue addressed in *Meredith*, *supra*, 29 Cal.3d 682, Zimmerman's challenge to prove agency presents the court with competing policy considerations. (See *id.* at p. 686.) Similar to the court in *Meredith*, we do not want to "chill free and open

19

communication between attorney and client" or otherwise "inhibit counsel's investigation of [her] client's case." (*Ibid*.) That said, we cannot extend the attorney-client privilege so far that it alleviates the burden of proving the existence of privilege to such a degree that the party invoking privilege merely has to represent an agent was involved in the delivery of the evidence without having to prove the existence of agency. Balancing these considerations, we adopt the rule set forth in *Lee, supra,* 3 Cal.App.3d 514 that the attorney-client privilege can protect the information coming to an attorney from the client's agent as long as the agent is acting within the scope and authority of his agency. In such a situation, we further conclude the attorney's observations could be privileged if they were made as a direct consequence of a protected communication. (See *Meredith*, *supra*, at p. 693.) However, the party claiming the existence of agency has the burden to prove the existence and scope of the agency with actual facts.

Further, we do not find any policy justification for relieving the party of its burden of establishing agency when claiming the attorney-client privilege based on agency. We do not believe our conclusion will have a significant chilling effect on attorney-client communications. If a defendant directly provides evidence to her attorney, the source of that evidence is privileged. (See *Meredith*, *supra*, 29 Cal.3d at pp. 691-692.) This same protection will extend to a situation where the defendant uses an agent to deliver the evidence. (See *id*. at p. 693, fn. 5; *Lee*, *supra*, 3 Cal.App.3d at p. 527.) However, in the latter situation, the party claiming the privilege must prove the existence of agency. Zimmerman has not carried her burden in this regard. As such, we have little choice but to deny the petition.

20

DISPOSITION

The petition is denied.  The stay issued on September 11, 2013 of the superior court's order requiring Zimmerman to report for custody is vacated.  This matter is remanded to the superior court for further proceedings as necessary.  In the interests of justice, this decision is made final as to this court seven days from the date of filing this opinion.  (Cal. Rules of Court, rule 8.490(b)(3).)


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.

21